UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES RUSSO,<br><br>    Plaintiff,<br><br>  v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>    Defendant. | Case No.: 1:16-cv-01134-BAM<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

## I. INTRODUCTION

Plaintiff Charles Russo ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income benefits ("SSI") pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.[1] Having considered the parties' briefs, along with the entire record in this case, the Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, this Court affirms the agency's determination to deny benefits.

---

[1] The parties consented to the jurisdiction of a United States Magistrate Judge Barbara A. McAuliffe. (Doc 7, 8).

1

## II. BACKGROUND

Plaintiff applied for benefits on March 16, 2012, alleging that he became disabled on January 1, 2009. AR 182-191, 202. The Commissioner denied the application initially and upon reconsideration. AR 129-132, 137-141. On July 17, 2014, a hearing was held before ALJ Sharon L. Madsen. AR 36-70. Plaintiff appeared with his attorney and testified. AR 36-69. The ALJ also heard testimony from Cheryl Chandler, a vocational expert. AR 65-70.

In a decision dated August 28, 2014, the ALJ found that Plaintiff was not disabled because, despite some impairment, Plaintiff retained the residual functional capacity (RFC) to perform light work. AR 17-34. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final determination for purposes of judicial review. AR 9-12; 42 U.S.C. §§ 405(g), 1383(c). This appeal followed.

## III. STANARD OF REVIEW

### A. Scope of Review

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commission's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

///

## B. Disability Standard

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he has an impairment of such severity that he is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability.

## C. The ALJ's Decision

Using the Social Security Administration's five-step sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 16, 2012, the application date. AR 22. The ALJ identified morbid obesity, lumbar degenerative disc disease, history of inguinal hernia, anxiety, and depression as severe impairments. AR 22. Nonetheless, the ALJ determined that the severity of Plaintiff's impairments did not meet or medically equal any of the listed impairments. AR 22-23.

Based on her review of the entire record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work, but was limited to occasional stooping, crouching, crawling, kneeling, and climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; and he is limited to simple, routine tasks with occasional public contact. AR 24-29.

The ALJ subsequently found that Plaintiff had no past relevant work, however given Plaintiff's age, education, work experience, and RFC, there were jobs existing in significant numbers in the national economy that he could perform. AR 29.

## IV. DISCUSSION [2]

Plaintiff presents two issues for the Court's review: (1) whether the ALJ properly rejected the opinion of his treating psychiatrist, Lana Williams, M.D. who opined that Plaintiff is markedly limited

---

[2] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

3

in all areas of work-related social functioning and (2) whether the ALJ erred in rejecting Plaintiff's subjective pain testimony. (Doc. 16).

### 1. The ALJ Properly Evaluated Dr. Williams' Opinion

#### A. Dr. William's Opinion

On April 14, 2014, three months before the administrative hearing, Plaintiff began psychiatric treatment with Lana Williams, M.D. AR 651-652. Between April 14, 2014 and June 5, 2014, Plaintiff alleged depression, anxiety, and sleep issues. AR 645-652. Dr. Williams prescribed a trial of Zoloft. AR 652. On April 28, 2014, Plaintiff reported that side effects he had experienced from Zoloft for the first four to five days had subsided and he "now [felt] fine"; Plaintiff received an increased dosage of Zoloft to 100 milligrams. AR 649-650. At his next appointment on May 20, 2014, Dr. Williams noted that Plaintiff was "tolerating (the) increase in Zoloft" and she placed him on a trial of 100 milligrams of Seroquel. AR 647-648. On June 5, 2014, Plaintiff reported "feeling 'ok'" and that he "[thought his] meds are starting to kick in"; he received an increase in dosage of Seroquel to 300 milligrams. AR 645-646. Plaintiff later received an additional increase in dosage of Seroquel to 600 milligrams on August 13, 2014. AR 668.

On June 4, 2014, Dr. Williams completed a Mental Residual Functional Capacity Assessment. AR 639-643. Dr. Williams marked various check boxes indicating that Plaintiff was moderately limited in areas of understanding and memory. AR 641. Dr. Williams also opined that Plaintiff had marked limitations in the ability to carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being distracted by them; make simple work-related decisions; complete a normal work-day and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. AR 641-642. Dr. Williams further opined that Plaintiff was markedly limited in all areas of work related social functioning and in the ability to respond appropriately to changes in the work setting; traveling in unfamiliar places or use public transportation; and setting realistic goals or making plans independent of others. AR 641-642.

Dr. Williams' assessment also included mental status examinations which indicated that Plaintiff was well-developed (WD), well-nourished (WN), and in no acute distress (NAD); had normal speech and thought process; had no suicidal ideation; had intact judgment and insight, memory, attention, language, and fund of knowledge; and had no abnormal or psychotic thoughts. AR 645-652.

The ALJ gave "little weight" to Dr. Williams' opinion as follows:

> I give Dr. Williams' opinion little weight because it is inconsistent with her notes and objective findings. For instance, the mental status examinations were normal except for anxious and irritable mood. In addition, there is no history of psychiatric hospitalizations, no suicide attempts, and no mania. Furthermore, her assessment appears to have relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, which I found to be only partially credible for reasons stated below. Moreover, Dr. Williams only treated the claimant for two months, which does not establish a longitudinal relationship with the claimant. Accordingly, I do not accept Dr. Williams' opinion with regard to the claimant's residual functional capacity.

AR 26.

### B. The ALJ Provided Specific and Legitimate Reasons

In challenging the ALJ's decision, Plaintiff contends that the ALJ improperly (1) relied on the normal mental status examinations in Dr. Williams' clinical notes; (2) ignored the opinion of therapist Kathie Spriggs, LMFT; and (3) relied on Plaintiff's subjective statements to discredit Dr. Williams' opinion. (Doc. 16 at 7-11).

The opinion of a treating physician must be given more weight than the opinion of an examining physician, and the opinion of an examining physician must be afforded more weight than that of a reviewing physician. *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014). The Commissioner must also provide clear and convincing reasons for rejecting the uncontradicted opinion of a treating or examining physician. *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006); *Annis v. Commissioner Social Sec. Admin.*, 598 Fed. Appx. 517, 519 (9th Cir. 2015). When a treating or examining physician's opinion is contradicted by another doctor, the opinion may only be rejected if the ALJ provides specific and legitimate reasons that are supported by substantial evidence in the record. *Hill v. Astrue*, 698 F.3d 1153, 1160 (9th Cir. 2012); *Murphy v. Commissioner Social Sec. Admin.*, 423 Fed. Appx. 703, 705 (9th Cir. 2011) (ALJ should at minimum provide specific and

legitimate reasons in the decision for either expressly or implicitly rejecting the opinions of an examining physician).

Here, the ALJ properly rejected Dr. Williams' treating opinion for several specific and legitimate reasons. First, the ALJ found that Dr. Williams' assessment of Plaintiff was inconsistent with the objective medical evidence; including Dr. Williams own treatment notes. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692-93 (9th Cir. 2009) (contradiction between treating physician's opinion and his treatment notes constitutes specific and legitimate reason for rejecting opinion); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (same); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (finding that the ALJ properly rejected the opinion of a treating physician since it was not supported by treatment notes or objective medical findings); *Teleten v. Colvin*, No. 2:14-CV-2140-EFB, 2016 U.S. Dist. LEXIS 43985, 2016 WL 1267989, at *5-6 (E.D. Cal. Mar. 31, 2016) ("An ALJ may reject a treating physician's opinion that is inconsistent with other medical evidence, including the physician's own treatment notes.").

In weighing Dr. Williams' opinion, the ALJ initially set out a complete summary of Plaintiff's "very sparse" mental impairment evidence. AR 27. The ALJ discussed the nature of Plaintiff's visits including Plaintiff's complaints of "anxiety, racing thoughts, poor sleep, and poor exercise." AR 27. The ALJ however noted that Plaintiff's mental status examinations from these visits "were all within normal limits." AR 27. Dr. Williams' treatment notes consistently documented that Plaintiff was well-developed, well-nourished, and in no acute distress during the mental status examinations. AR 645, 647, 649, 651. Plaintiff also demonstrated normal speech and thought process, intact judgment and insight, memory, attention, concentration, language, and fund of knowledge, and he repeatedly denied suicidal ideation. AR 645-652. While Dr. Williams' recorded these largely normal observations, except anxiety and irritable mood, her findings concluded that Plaintiff was markedly limited in numerous areas. According to Dr. Williams, Plaintiff was severely limited in his ability to interact with others, unable to carry out detailed instructions, and very limited in his ability to deal with the public, maintain concentration, or complete a normal workweek. AR 642. Indeed, of the twenty areas of functioning listed on Dr. Williams' mental RFC questionnaire, Dr. William's reported that Plaintiff was markedly limited in 15 of those areas. AR 642.

The ALJ found that the inconsistency between Dr. Williams' consistently normal findings and her opinion regarding Plaintiff's extensive limitations failed to support Dr. Williams' extreme opinion that Plaintiff is incapable of basic social functioning. Because there is very little in Dr. Williams' treatment notes to suggest such extensive limitations, the ALJ did not err in rejecting her opinion as entirely inconsistent with the severe limitations she assessed. This inconsistency was a specific and legitimate reason for the ALJ to discount Dr. Williams' opinion. *See Bayliss*, 427 F.3d at 1216; *Tonapetyan*, 242 F.3d at 1149.

Second, the ALJ accorded little weight to Dr. Williams' opinion, in part, because it was premised on Plaintiff's subjective statements, which the ALJ found to not be entirely credible. AR 28. The Ninth Circuit has explained that rejection of a treating physician's opinion constitutes a specific and legitimate reason when the opinion is premised on a claimant's own subjective complaints that the ALJ had properly discredited. *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible.") (q*uoting Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999)).

Citing *Ryan v. Comm'r of Soc. Sec.*, Plaintiff argues that there is nothing in the record to suggest Dr. Williams relied on Plaintiff's subjective complaints more than her own clinical observations. 528 F.3d 1194, 1199-1200 (9th Cir. 2008). Plaintiff's reliance on *Ryan* is misplaced. *Ryan* holds that "an ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations." *Id.* at 1199-1200. Here, however, Dr. Williams did not properly support her opinion with her own observations. A psychiatrist's clinical interview and mental status evaluation are "objective measures" which "cannot be discounted as a self-report." *See Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). The mental status evaluation by Dr. Williams demonstrated that Plaintiff's mental impairments were within normal limits. The evidence underlying Dr. Williams' opinion is the objective findings and Plaintiff's subjective self-reports. Specifically, Dr. Williams regurgitated Plaintiff's statements that he had extreme anxiety, was angry and aggressive, and could not be around others except for his

7

wife. AR 647, 649, 651. Dr. Williams thus appears to have accepted at face value, Plaintiff's statements regarding his symptoms. When reviewing this evidence, and the record as a whole, the Court concludes that the ALJ's finding that the opinion of Dr. Williams was highly influenced by Plaintiff's subjective statements is based on substantial evidence in the record and a specific and legitimate reason to discount Dr. Williams' findings.

Third, the ALJ declined to give significant weight to Dr. Williams' opinion because she "only treated the claimant for two months," which does not amount to a significant longitudinal relationship. AR 28. Limited observation of a claimant is a good reason to give less weight to a physician's opinion, especially when considered among the other factors already discussed by the ALJ's decision. *See Orn v. Astrue*, 495 F.3d 625, 633 (9th Cir. 2008) (weight affording treating physician's opinion depends on "the nature and extent of the physicians' relationships" with claimant); *Benton v. Barnhart*, 331 F.3d 1030, 1038 (9th Cir. 2003) (duration of treatment relationship and frequency and nature of contact relevant in weighing opinion). The record supports the ALJ's characterization of Dr. Williams' opinion. Dr. Williams provided her opinion after seeing Plaintiff for only four visits. AR 645, 647, 646. The ALJ found that this short treatment relationship coupled with Dr. Williams' treatment notes regularly documenting mostly normal mental status examinations undermined Dr. Williams' opinion. This was a specific and legitimate reason to give little weight to Dr. Williams' opinion because Dr. Williams did not have a longitudinal picture of Plaintiff's mental health conditions.

Finally, to the extent that Plaintiff offers the treatment records from his therapist, Kathie Spriggs, to support Dr. Williams' opinion, the ALJ properly declined to credit Ms. Spriggs' findings. Ms. Spriggs, a licensed marriage and family therapist, reported that Plaintiff needed his wife's support at all sessions. She also noted that Plaintiff had "[m]aladaptive communications patterns" which complicate delivery of care and problems with relationships. AR 653-663.

Physicians' assistants, social workers, and therapists are defined as "other sources," and are therefore entitled to less deference than traditional medical sources, such as doctors and psychiatrists. 20 C.F.R. § 404.1513(d); *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). An ALJ need only give germane reasons to discount such opinions. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217,

8

1224 (9th Cir. 2010) (*quoting Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)).

Like Dr. Williams' opinion, the ALJ noted that Ms. Spriggs' findings were unsupported by the objective medical evidence. AR 28. Lack of objective medical evidence to support an opinion is a proper, germane reason to reject the opinion of a non-traditional medical source. *See, e.g. Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir.1984). Accordingly, the ALJ properly rejected the findings in Ms. Spriggs' report.

Ultimately, instead of relying on Dr. Williams' unsupported opinion, the ALJ properly afforded greater weight to the totality of the medical opinion evidence from the examining and state agency physicians that indicated Plaintiff's mental health impairments were present but not disabling. 20 C.F.R. §§ 416.927 (c)(3),(4) (more weight is given to an opinion and/or medical source if it is well-supported . . .and consistent with the record as a whole); SSR 96-6p (same). Reversal is therefore not warranted on this issue.

## 2. The ALJ's Credibility Determinations

In his second issue, Plaintiff argues that the ALJ erred by finding his subjective pain symptoms only partially credible. (Doc. 16 at 11-16). Specifically, Plaintiff contends that the ALJ's conclusions regarding his activities of daily living and sporadic work history were insufficient reasons to question his credibility. (Doc. 16 at 14-16).

### A. Credibility Legal Standard

To evaluate the credibility of a claimant's testimony regarding subjective complaints of pain and other symptoms, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id.* The claimant is not required to show that the impairment "could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the symptom." *Id*. (emphasis added). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony regarding the severity of the symptoms for "specific, clear and convincing reasons" that are supported by substantial evidence. *Id.*

An ALJ can consider a variety of factors in assessing a claimant's credibility, including:

(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039.

Other factors can include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. *Light v. SSA*, 119 F.3d 789, 792 (9th Cir. 1997). An ALJ can only rely on an inconsistency between a claimant's testimony and the objective medical evidence to reject that testimony where the ALJ specifies which "complaints are contradicted by what clinical observations." *Regennitter v. Commissioner of SSA*, 166 F.3d 1294, 1297 (9th Cir. 1999). An ALJ properly discounts credibility if she makes specific credibility findings that are properly supported by the record and sufficiently specific to ensure a reviewing court that she did not "arbitrarily discredit" the testimony. *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991).

### B.     The ALJ Provided Clear and Convincing Reasons

In finding that Plaintiff's subjective complaints were only partially credible, the ALJ provided several reasons as follows: (1) Plaintiff's impairment testimony was inconsistent with the descriptions of his daily activities; (2) Plaintiff's mental health impairments were exaggerated when compared to the objective medical evidence; and (3) Plaintiff had a poor work history. AR 28-29.

Particularly compelling is the ALJ's finding that, over the last 15 years, Plaintiff has never worked at "substantial gainful activity levels." AR 29. "An ALJ is required to consider work history when assessing credibility." *Matthews v. Berryhill*, 2017 WL 3383118, at *12 (E.D. Cal. Aug. 7, 2017) (citing 20 C.F.R. § 404.1529(c)(3) and Social Security Ruling 96–7p, 1996 SSR LEXIS 4). Evidence of a poor work history that suggests a claimant is not motivated to work is a proper reason to discredit a claimant's testimony that he is unable to work. *Albidrez v. Astrue*, 504 F. Supp. 2d 814, 822 (C.D. Cal. 2007) (ALJ "may properly consider a claimant's poor or nonexistent work history in

making a negative credibility determination").

Here, a review of Plaintiff's work history reveals that with some exceptions, Plaintiff had earnings between 1990 and 2003. AR 193. During these periods, Plaintiff earned between $12.75 and $16,996.63 annually. While Plaintiff argues that his poor work history supports his allegations of disability because he has been terminated from work due to an inability to deal with others and for altercations in the workplace, this argument is undermined by Plaintiff's contradicting statements in the record that he "gets along great with authority figures" and that "he has never been fired from employment because of problems getting along with others." AR 248. The ALJ's determination that Plaintiff had a poor work history is therefore supported by substantial evidence in the record. This is a valid clear and convincing reason for an adverse credibility finding. *See, e.g., Matthews*, 2017 WL 3383118, at *12 ("Evidence of a poor work history is a clear and convincing reason to discredit [a] plaintiff's credibility." (citations omitted)).

Had this been the only reason given, this alone would have been sufficient to support an adverse credibility determination. *See Carmickle v. Comm'r, SSA*, 533 F.3d 1155, 1162 (9th Cir. 2008). The Court, however, further concludes that the ALJ supported her credibility finding with additional reasons by relying on the inconsistencies between Plaintiff's subjective complaints and the medical evidence, specifically that Plaintiff's mental health impairments were not supported by any objective medical testing or clinical findings. AR 29. *See Carmickle*, 166 F.3d at 1297 (explaining that a determination that a claimant's complaints are "inconsistent with clinical observations" can satisfy the clear and convincing requirement). The ALJ found that while Plaintiff complained of auditory hallucinations and other severe mental impairments, Plaintiff had "no psychiatric hospitalizations, no history of suicide attempts, and no history of psychosis or manic episodes." AR 28. Additionally, Plaintiff's "mental status examinations were normal." AR 29.

While subjective symptom testimony cannot be rejected solely on the ground that it is not fully corroborated by objective medical evidence, the medical evidence (or lack thereof) is still a relevant factor in determining Plaintiff's credibility. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 CFR § 404.1529(c)(2)). Here, Plaintiff's subjective complaints were not rejected solely on

11

the ground that they were inconsistent with the objective medical evidence: the ALJ also relied on evidence of Plaintiff's poor work history as an independent reason to partially discredit Plaintiff. The inconsistencies between Plaintiff's complaints of severe symptoms and clinical observations taken together with the evidence of Plaintiff's poor work history, constitutes substantial evidence supporting the ALJ's adverse credibility finding. *See Smith v. Colvin*, No. 2:1–cv–03045–KJN, 2013 WL 1156497, at *8 (E.D. Cal. Mar. 19, 2013) (An ALJ may properly rely on plaintiff's poor work history, and on conflict between claimant's testimony of subjective complaints and objective medical evidence in the record); s*ee also Velasquez v. Colvin*, No. ED CV 13–1542–AS, 2014 WL 6473790, at *7 (C.D. Cal. Nov. 19, 2014); *Chopp v. Colvin*, No. ED CV 12–291–SP, 2013 WL 1120085, at *3–5 (C.D. Cal. Mar. 18, 2013).

Overall, the ALJ provided clear and convincing reasons supported by substantial evidence to discount Plaintiff's credibility. *Carmickle,* 533 F.3d at 1163 (finding that striking down one or more justifications for discrediting a claimant's testimony amounted to a harmless error where the ALJ presented other reasons for discrediting the testimony that were supported by substantial evidence in the record). Therefore, even if Plaintiff's other allegations are error; the articulated reasons discussed here must lead the Court to affirm the ALJ's adverse credibility decision. Plaintiff's challenge on this ground fails.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security, and against Plaintiff Charles Russo.
IT IS SO ORDERED.

Dated: **March 13, 2018**     /s/ *Barbara A. McAuliffe*
UNITED STATES MAGISTRATE JUDGE